H. D. SHEPARD AND C. D. WALDO, *Partners, &c.,* v.
T. W. LYNCH.

1. SALE OF HAY, *When Complete.* Where the seller of a rick of hay, esti-
mated at thirty-five tons, executes to the purchaser a bill of sale, describ-
ing it therein with sufficient identity to be easily ascertained, and the
purchaser delivers a receipt therefor, specifying the acceptance of one
rick of hay of thirty-five tons, more or less, at $2 per ton, to be credited
on the seller's note, and there is an understanding at the time of the ex-
ecution of the papers, that if the hay in the rick measures more than
thirty-five tons the indorsement on the note is to be increased accord-
ingly, and if it measures less than thirty-five tons, to be decreased to the
actual tons of hay in the rick, and there is, according to the custom in
the community where the hay is sold, a fixed and standard rule for as-
certaining the quantity of hay in the rick by measurement, and nothing
further is to be done by the seller to ascertain the quantity of hay in the
rick, or to put the hay in condition to be delivered, *held,* that the title
and possession of the hay passed upon the execution of the bill of sale
and receipt.

2. AFFIDAVITS FOR NEW TRIAL, *Unworthy of Credit.* A new trial was
asked for by plaintiffs under the following circumstances: For the pur-
pose of obtaining a continuance, the defendant made affidavits alleging
the substance and materiality of testimony expected to be obtained from
absent witnesses. The plaintiffs consented on the trial that the facts al-
leged in the affidavits might be read and treated as the depositions of
such witnesses. Afterward, three of these witnesses filed affidavits that
if present at the trial they would not have testified as alleged. These
affidavits were all signed with a mark by the parties, who were unable
to write their own names. Upon such hearing, other affidavits were
filed by the plaintiffs in support of their request for a new trial, in which
there were incorporated false statements, without the knowledge of the
parties subscribing and swearing to them. *Held,* That this fact brought
all the affidavits filed by plaintiffs under such suspicion, that neither the
district court nor this court can receive any of them with absolute confi-
dence or credence; and therefore the district court committed no error
in refusing to grant plaintiffs a new trial upon the ground that the judg-
ment had been obtained by false testimony in the use of the affidavits
filed by the defendant for a continuance.

*Error from Osage District Court.*

ACTION upon a promissory note, brought by *Shepard* and
another, late partners as Shepard & Waldo, against *Lynch.*
Trial at the April Term, 1877, of the district court, and judg-

ment for the defendant. New trial denied, and plaintiffs bring the case here. The opinion states the facts. The attorneys for plaintiffs in error here were not their attorneys in the district court.

*Scott & Lynn,* for plaintiffs in error.
*Ellis Lewis,* and *Wm. Thomson,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This action was founded upon a promissory note held by plaintiffs in error against the defendant in error, calling for $167.82. The plaintiffs, after giving certain credits on the note, claimed a judgment for the balance, which they alleged to be $83.30, with interest from date thereof at 12 per cent. per annum. The defendant, in his answer and set-off, alleged that he had, before the commencement of the action, fully paid the note, and that the plaintiffs were indebted to him in the sum of $95.65, for hay, corn, and labor. Upon the trial, the following special findings of fact were returned by the jury:

"Question 1. When the bargain was made for the sale of the hay, at the time of the execution of the bill of sale mentioned in the evidence, had the number of tons of hay contained in the stack in controversy been mutually ascertained? Answer. No.

"Q. 2. If to the preceding question you answer nay, how was the amount of hay in the stack to be ascertained—by measurement or weight? A. By measurement.

"Q. 3. From the evidence, will an ascertained quantity of hay in the stack by measure contain the same number of tons of hay cut at one season of the year as the same quantity by measure of hay cut another season? A. No.

"Q. 4. From the evidence, will an ascertained quantity of hay by measure just put in a stack contain as many pounds of hay by weight as the same quantity by measure, in the same stack, after it has settled? A. No.

"Q. 5. From the evidence, is there any fixed and standard rule for ascertaining the quantity of hay by measurement in a stack? A. Custom has fixed a rule.

"Q. 6. Should you answer the last question affirmatively,

what is that fixed and standard rule? A. Three hundred and forty-three cubic feet.

"Q. 7. At the time mentioned in question No. 1, or afterward, and before the commencement of this action, did the plaintiffs and defendant mutually fix upon any rule for the measurement of the hay in said stack? A. No.

"Q. 8. Did the plaintiffs, or any one authorized by them, ever measure the hay in controversy? A. Yes.

"Q. 9. If you answer the last question in the affirmative, at what time did they measure said stack? A. We don't know the date.

"Q. 10. If you answer question No. 9 affirmatively, give the length of the stack, its width and height, as measured by them? A. We are unable to state the width, length, and height.

"Q. 11. If you answer question No. 8 affirmatively, what number of tons did they ascertain to be in the stack? A. We do not know.

"Q. 12. Did the defendant ever measure the hay in controversy? A. Yes.

"Q. 13. If yea be the answer, when did he measure the hay? A. In December, 1875.

"Q. 14. If you answer the twelfth question affirmatively, what was the length of the stack, its width and height, as ascertained by him? A. 113½ feet length, 14 feet width, 8⅓ feet height.

"Q. 15. If you answer the twelfth question affirmatively, what amount of hay, in tons, did the defendant ascertain to be in the stack? A. By his computation there were over thirty-nine tons.

"Q. 16. Did the the plaintiffs and defendant, at any time before the commencement of this action, mutually agree upon the number of tons of hay there was in the stack? A. No."

The general verdict of the jury was in favor of the defendant for $12.21. Judgment was entered thereon, and plaintiffs bring the case here. They contend that the verdict was not sustained by the evidence, and that the court committed error in refusing to charge the jury as requested by them. These objections involve substantially the same question. This is, that there was no completed sale of the hay to plaintiffs by defendant, but only a mere executory contract of sale. This is based upon the theory that as the quantity or measurement

of the hay had never been agreed upon, it was in no condition to be accepted by the plaintiffs. They also assert that the parties never did agree upon the identity of the hay claimed to be sold. Both of these objections must be overruled. The plaintiffs testified that the bill of sale was merely taken as a chattel mortgage, and that no purchase of the hay had ever been made. This leaves the question of sale upon the evidence of the defendant. The jury were the judges of the credibility of his evidence, and if they accepted his testimony as truthful, a completed sale was fully made out. He testified that he sold on October 27, 1875, to plaintiffs a rick of hay at $2 per ton; that Waldo said that Shepard was away, but when he came home he would come over or send some one to measure it. At the time, he executed to plaintiffs a bill of sale, and described therein the property as follows: "One rick, thirty-five tons prairie hay, stacked on the east side of my corral, on my farm in Burlingame township, Osage county, Kansas." And the agent of Shepard & Waldo then gave the following receipt:

"BURLINGAME, KANSAS, October 27, 1875.

"Received from T. W. Lynch one rick of hay, thirty-five tons more or less, at $2 per ton, to be credited on his note.

"SHEPARD & WALDO, per TAYLOR."

Defendant also testified, that if there was more hay in the rick than thirty-five tons, he was to have a larger indorsement on the note; if less, a smaller one. The indorsement on the note was to be altered or amended, according to the actual number of tons of hay in the rick. As the hay was in a separate rick in the corral, and easily ascertainable, its identity was sufficiently described in the bill of sale, and sufficiently manifest to all the parties at the time of the agreement. We do not think the smaller rick, containing only eighteen to twenty tons, could have been mistaken for the larger one. The only controversy possible in the case, is over the question of measurement. While it is a general rule, that if by the terms of sale there remains anything to be done by the vendor to render the goods deliverable, the sale is not complete;

and while it also is generally true, that if anything remains to be done between the parties to put the articles in a deliverable state, the contract is not complete and the property does not pass, yet these rules do not have application here, because it does not appear that the seller was to measure the hay, or that anything remained to be done by him in connection therewith. If the hay was to have been weighed out of a mow by the seller, or if the plaintiffs were not to accept the rick of hay until the seller had weighed and ascertained the number of tons therein, a different case would be presented. Here, however, the bill of sale was handed to the plaintiffs, and such a constructive delivery by the seller was sufficient to pass the right of property. The bill of sale described the property, the price per ton was agreed to, and all that the plaintiffs had to do after receiving such bill of sale was to determine the number of tons of hay in the rick, by measurement. This was not an act to be performed by the seller. If there were thirty-five tons by measurement, defendant was entitled to a credit on his note of $70; if thirty-nine tons, he was then entitled to a credit of $78. The evidence and the findings of the jury show that custom has established a standard rule for ascertaining the quantity of hay in a stack by measurement, and that such rule requires three hundred and forty-three cubic feet of hay for a ton. All that the plaintiffs had to do after accepting the bill of sale, to ascertain definitely the amount due for the hay, was to determine the number of cubic feet in the rick. The charge of the court in regard to the sale of hay, was as follows:

1. Sale of hay, when complete.

"The most embarrassing question in this case is in relation to the item of hay, which the defendant claims to have sold and delivered to the plaintiffs. Before this suit was begun, the plaintiffs contend that there was no sale and delivery of the hay, and therefore it becomes the duty of the court to state to the jury the law which governs the sale of personal property. It is a general rule that, when anything remains to be done by either or both of the parties to a contract of sale before delivery, the title does not pass, and the property is still at the risk of the seller. But this rule is not universal;

and whenever it is apparent from the evidence that it was the intention of the vendor to transfer the title, and of the vendee to accept it, (a sale of personal property may be complete, although the thing sold remains to be measured, or the exact amount of the price remains to be ascertained by measurement, in relation to which measurement the law has fixed no standard,) then the law presumes that the parties contracted with a view to that measurement which is customary and usually adopted and acted upon by the community in general in which the article to be measured is situated."

This instruction, though somewhat lacking in verbal accuracy, under the evidence sufficiently declared the law. These views are not in conflict with the case cited by counsel, of *Simmons v. Swift,* 5 Barn. & Cress. 857, nor with the other authorities cited, when they are carefully examined. The extent of these authorities is only to the effect that, when something is to be done by the seller to ascertain the identity, quantity or quality of the article sold, or to put it in the condition which the terms of the contract require, the title does not pass.

It is further contended that the charge of the court was misleading, because the jury were not instructed that the plaintiffs had the right to refuse to take and pay for the hay if it did not come up to the representations of defendant. That question is not in this case, because the plaintiffs never declined to receive the hay and complete their purchase upon the ground of any false representations of defendant. The claim of plaintiffs was, that they had a lien only upon the property, and of course, under this claim, they never attempted to rescind the contract. If their evidence was true, no purchase of the hay had ever been made. The jury, however, believed otherwise.

Complaint is made because the court embodied in its charge the statement that a chattel mortgage or a bill of sale upon personal property, in the absence of any change of possession, is without validity against creditors or subsequent purchasers, unless it, or a true copy thereof, is filed with the register of deeds in the county where the property is situated.

We do not perceive how this statement of law could have been prejudicial to any of the parties, and whether necessary or not in the charge, it is no sufficient ground for reversing the judgment.

A new trial was asked for upon the following facts: For the purpose of obtaining a continuance, the defendant made certain affidavits alleging the substance and materiality of evidence expected to be obtained from absent witnesses. The plaintiffs consented on the trial that the facts alleged in the affidavit should be read and treated as the deposition of such witnesses. Afterward, three of the witnesses mentioned in the affidavits for continuance, to wit, Gilmore, Wilkinson, and Gardner, filed their affidavits, denying, if present, that they would have testified as stated. Perhaps, if this was all that appeared, we would feel compelled to reverse the judgment, upon the ground that it had been obtained by the use of false testimony, which the defendant knew at the time to be false. Unfortunately for the claim of the plaintiffs, the affidavits filed in support of the motion for a new trial are badly clouded. Three witnesses, N. M. Johnson, David Burrell, and Henry Burrell, testified that their affidavits filed for such new trial were obtained fraudulently, or rather, statements were incorporated in them without their knowledge, which are not true. Now, the affidavits of Gilmore, Wilkinson and Gardner are signed by the marks of these respective parties, and if other affidavits filed by plaintiffs had been improperly obtained, the court might well think, under the circumstances, that absolute credence ought not to be given to these affidavits. In other words, the conduct of the plaintiffs, or rather their attorneys in the district court, (who, we may observe, are not the attorneys appearing for plaintiffs in error in this court,) for whom they are responsible, in the preparation of their evidence for a new trial, bears such unmistakable signs of misconduct that neither the district court nor this court can treat the affidavits filed by them with confidence or respect. Upon the whole record, we perceive no

2. Affidavits, unworthy of credit.

material error; and therefore the judgment of the district court must be affirmed.

All the Justices concurring.